UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Wael Samir Sharaby,

        Plaintiff,                    Civil Action No. 13-13398

        v.                             Honorable Nancy G. Edmunds

Commissioner of Social Security,

        Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [8] AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [9]**

      Plaintiff Wael Samir Sharaby appeals Defendant Commissioner of Social Security's ("Commissioner") denial of his application for supplemental security income under the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, this Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the Act. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED.

**I. Background**

    **A. Procedural History**

      On March 2, 2012, Plaintiff applied for supplemental security income asserting that he became unable to work on January 1, 2007. (Tr. 87-92.) The Commissioner initially denied Plaintiff's disability application on May 11, 2011. (Tr. 49-58.) Plaintiff then requested

an administrative hearing, and on November 22, 2011, he appeared with counsel before ALJ Gerald A. Freeman. (Tr. 26-45.) The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr.17-22.) The ALJ's decision became the final decision of the Commissioner on June 10, 2013, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 2-3.) Plaintiff filed this suit on August 7, 2013. (Dkt. 1, Compl.)

**B. Medical Evidence**

The majority of Plaintiff's medical evidence comes from Plaintiff's visits to the Kresge Eye Institute ("Institute"). Plaintiff appears to have first gone to the Institute on February 15, 2010. (Tr. 228-30.) Plaintiff went to the Institute as an emergency walk-in complaining of double vision in his left and right eye. (Tr. 228.) Dr. Mckee wrote that the double vision stated suddenly, but was mild and stable. (*Id.*) He also wrote that Plaintiff was unable to see fingers with his right eye, but that he had to "full to finger counting" in his left eye. (*Id.*) Dr. Mckee referred Plaintiff to Dr. Puklin for an evaluation. (Tr. 230.)

Plaintiff went to the Institute multiple times in March before meeting with Dr. Pulkin. In none of those visits did his condition appreciably change. (Tr. 210-27.) Dr. Pulkin finally met with Plaintiff in April. Dr. Pulkin wrote a letter dated April, 26, 2010, discussing an evaluation of Plaintiff that occurred on April 9, 2010. (Tr. 234.) The letter states that Plaintiff's visual acuity measured hand motion in the right eye and 20/60 in the left eye. (*Id.*) It also states that Plaintiff's right eye was filled with silicone oil and was aphakic (*i.e.*, without a lens). (*Id.*) The superior one-half retina was attached, while the lower half of the retina was detached. (*Id.*) In Plaintiff's left eye, the letter states that Plaintiff's inter-ocular lens was subluxated and the pupil was aphakic. (*Id.*) The letter indicates that Plaintiff had

not filled a prescription he had that would give Plaintiff the capacity to see. (*Id.*) Dr. Pulkin also addressed the concerns of Plaintiff's sister that Plaintiff's left eye will require surgery. He wrote that the dislocated inter-ocular lens could "sit there for an indefinite time" and that "by filling his prescription he will do well." (*Id.*) He also wrote that Plaintiff's pressure is controlled when takes his medication. (*Id.*)

Throughout 2010 and 2011, Plaintiff went to the Institute many times following Dr. Pulkin's letter for follow-up evaluations. Although he continued to have vision problems with in his left eye, the condition was stable. (Tr. 171, 192, 207, 251.) His vision improved with glasses, (Tr. 195), and his inter-ocular pressure was good. (Tr. 273.) Plaintiff also did not appear to be suffering from any increased pain in his eye during that time. (Tr. 167, 170, 255.)

### C. Testimony at the Hearing Before the ALJ

#### 1. Plaintiff's Testimony

Plaintiff testified at the hearing with the aid of an interpreter. (Tr. 30.) At the time of the hearing, Plaintiff was 23 years old. (Tr. 32.) He lived in an apartment with his father, mother, and younger sister. (*Id.*) He was born in Egypt, but had lived in the United States for six years prior to the hearing. (Tr. 33.) Plaintiff completed one year of high school in the United States. (*Id.*) He has never worked in the United States. (*Id.*)

Plaintiff testified that his disability arose out of an injury he received at school in 2007. *(*Tr. 33, 37.*)* The injury resulted in Plaintiff being blind in his right eye. (Tr. 34.) It also affected the vision in his left eye. Although Plaintiff is not blind in his left eye, he experiences pain and pressure. (*Id.*) Plaintiff testified that because of the injury, he cannot "concentrate and look at things for more than 20 minutes." (*Id.*) After 20 minutes, the

3

pressure increases to the point where Plaintiff must lie down. (Tr. 35-36.) Plaintiff testified that he has to lie down eight to nine times a day. (Tr. 36.) The pressure prevents him from reading. Plaintiff also testified that he cannot look or bend down because of the pressure. (Tr. 35.) Stress and high temperatures also aggravate his left eye. (Tr. 36, 39.) Plaintiff takes medication for his left eye, including eye drops. (Tr. 34-35.) Plaintiff testified that the injury also has caused his weight to increase 90 pounds. (Tr. 36.) The ALJ noted that Plaintiff is "morbidly obese." (Tr. 19.)

Plaintiff testified that he requires assistance in certain tasks due to his eye injury. His mother or sister help him apply his daily eye drops. (Tr. 34-35.) Plaintiff does not drive. (Tr. 39.) His sister takes him to his doctor's appointments and fills out the forms for him. (Tr. 38.) Plaintiff testified that he goes to the doctor "sometimes weekly, sometimes monthly." (*Id.*) Plaintiff also testified that he is unable to help with housecleaning in the apartment, but could not explain why. (Tr. 35.) Plaintiff stated that he can see when he wears his glasses. (Tr. 39.) He also indicated to the ALJ that he could see the number of fingers the ALJ was holding up when wearing his glasses. (*Id.*)

### 2. The Vocational Expert's Testimony

The ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with functional limitations approximating Plaintiff's. The ALJ asked about job availability for a hypothetical individual of Plaintiff's age, education, and work experience, who was capable of performing light work, with the following additional limitations: no exposure to power tools, machinery, or heights; and to avoid excessive bending. (Tr. 40.) By "excessive," the ALJ clarified that he meant "virtually no bending because of the pressure that it causes on the eyes." (*Id.*) After a question from

the VE, the ALJ further clarified that by "bending," the ALJ meant "bending with the sense of placing his head down in forward position." (*Id.*) The ALJ further stated "there would be minimal movements of the head either up, down, or sideways . . . And when I say minimal I don't mean none at all and I mean just in a normal way." (Tr. 40-41.)

In response to the hypothetical, the VE identified hand packager, sorter, and simple assembler as available jobs. Approximately 6000 of these jobs exist in the local area. (Tr. 40.) The ALJ asked wether these jobs could be performed by someone who was blind in one eye and had issues with glaucoma in the other eye, and the VE said that they could. (Tr. 41-42.)

**II. The ALJ's Application of the Disability Framework**

Under the Social Security Act, disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be

> disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 9, 2011, the application date. (Tr. 19.) At step two, he found that Plaintiff had the following severe impairments: obesity and vision problems. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (*Id.*) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity to:

> perform light work as defined in 20 CFR 416.967(b) except he should avoid bending and he is able to bend with minimal head movement; he is unable to operate power equipment, machinery or to work at heights.

(Tr. 19.) At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 20.) At step five, the ALJ found that sufficient jobs existed in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity. (Tr. 21.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through the date of his decision. (Tr. 21-22.)

### III. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

### IV. The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff's only challenge to the ALJ's decision is that the ALJ failed to properly evaluate Plaintiff's credibility in determining that Plaintiff is not disabled under the Act. Plaintiff argues that the ALJ did not adequately explain his reasons for not believing Plaintiff's testimony on the pain and pressure in his left eye, the amount of time he needs to lay down a day, and how long he is able to concentrate. This Court disagrees. Plaintiff's argument ignores the ALJ's reasons for discounting Plaintiff's credibility and does not cite any medical evidence that the ALJ failed to consider. As set forth below, the ALJ reasonably discounted Plaintiff's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole.

Determinations of credibility rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers*

*v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reasons." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. Soc. Sec. Rule 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. 416.929.

Here, the ALJ considered the entire case record in determining that Plaintiff is not disabled under the Act, and provided sufficient reasons for discounting Plaintiff's testimony. The ALJ first found that Plaintiff's claims of complete and total disability were not credible because they were inconsistent with the objective medical evidence. (Tr. 20.) The ALJ accepted that Plaintiff was blind in his right eye, but that the objective medical evidence showed that the vision in his left eye, when corrected, was 20/25. (Tr. 20.) Although Plaintiff may eventually require surgery on his left eye, his condition is currently stable and is being closely followed by an opthamologist. (Tr. 19-20.) The pain and pressure in his left eye can be effectively managed with medication. (Tr. 234.) The ALJ further found that no treating, examining, or reviewing reported that Plaintiff was disabled or blind. (Tr. 20.)

The ALJ also considered the Plaintiff's description of his daily activities. *See* 20

9

C.F.R. § 416.929(c)(3); *Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). The ALJ found that Plaintiff is able to attend to his own personal needs and that he is able to relate to family members. (*Id.*) His impairments also do not prevent him from moving about or lifting at least 20 pounds. (*Id.*) The ALJ also found that Plaintiff does not suffer from disabling side effects from his medication, and that he is being treated with conservative measures. (*Id.*)

The ALJ's decision contained specific reasons for discounting Plaintiff's testimony, and these reasons were "sufficiently specific to make to clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) (quoting Soc. Sec. Rule 96-7, 1996 WL 374186, at *4)). All of the ALJ's findings are supported by the record. Plaintiff has cited to no objective medical evidence supporting his assertion of disability due to pain and pressure in his left eye, the amount of time he needs to lie down a day, or how long he is able to concentrate. Indeed, the objective medical testimony contradicts Plaintiff's testimony. The ALJ's credibility determination is supported by substantial evidence, and Plaintiff has failed to present a "compelling reason" to disturb it. *Smith*, 307 F.3d at 379.

**V. Conclusion**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED, and, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED.

SO ORDERED.

10

        S/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated:  December 4, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 4, 2014, by electronic and/or ordinary mail.

        S/Carol J. Bethel
        Case Manager